IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| UNITED STATES | |
| v. | Criminal Case No. ELH-98-259 -9 |
| CLARENCE HICKS, | |
| *Defendant*. | |

**MEMORANDUM**

In 1999, a jury convicted Clarence Hicks of conspiracy to distribute cocaine and cocaine base ("crack"), based on his involvement in a long-running, violent narcotics distribution organization operating in and around the O'Donnell Heights public housing community in Baltimore, Maryland.  On March 22, 2000, Judge Benson E. Legg sentenced Hicks to a term of imprisonment of 360 months (*i.e.* thirty years), which was at the bottom of the then-applicable guidelines range of 360 months to life, to be followed by five years of supervised release.[1]  The conviction and sentence were affirmed by the Fourth Circuit in a consolidated appeal that involved several co-defendants.  *See United States v. Johnson*, 26 F. App'x 111 (4th Cir. 2001), *cert. denied*, 535 U.S. 949 (2002).

In 2002, Hicks challenged his criminal conviction and sentence by way of a post-conviction petition under 28 U.S.C. § 2255.  The district court did not rule expeditiously on Hicks's § 2255 petition and, in 2005, the Fourth Circuit issued a writ of mandamus, directing the district court to resolve Hicks's petition within sixty days.  *See In re Hicks*, 118 F. App'x 778 (4th Cir. 2005); *see also* 28 U.S.C. §1657(a).  The district court subsequently denied Hicks's

---

[1] The relevant sentencing guidelines are discussed in more detail, *infra*.

§ 2255 petition, and Hicks did not appeal from that decision. *See In re Hicks*, 145 F. App'x 433 (4th Cir. 2005) (denying writ of mandamus directing district court to address allegedly unresolved claim of actual innocence, because Hicks had not filed a notice of appeal from denial of § 2255 petition). However, Hicks filed a motion under Fed. R. Civ. P. 60(b), seeking post-judgment relief from the district court's denial of his § 2255 petition. Because the district court did not expeditiously resolve the Rule 60(b) motion, the Fourth Circuit issued another writ of mandamus, directing the district court to resolve the motion within sixty days. *See In re Hicks*, 279 F. App'x 236 (4th Cir. 2008). The district court denied the Rule 60(b) motion, and Hicks's appeal from that decision was dismissed for want of a certificate of appealability or any ground for such a certificate to issue. *See United States v. Hicks*, 300 F. App'x 246 (4th Cir. 2008), *cert. denied*, 130 S. Ct. 207 (2009). In 2009 and 2010, Hicks filed two other Rule 60(b) motions, seeking to reopen the § 2255 proceeding on the basis of "fraud, mistake, and newly discovered evidence." The district court denied these Rule 60(b) motions as untimely and lacking in merit, and Hicks's appeals from both decisions were again dismissed for want of a certificate of appealability. *See In re Hicks*, 389 F. App'x 328 (4th Cir. 2010); *In re Hicks*, 421 F. App'x 276 (4th Cir.), *cert. denied*, 132 S. Ct. 833 (2011).

In the meantime, in 2007 the United States Sentencing Commission amended the sentencing guidelines relevant to Hicks's crime of conviction, and gave the amendment retroactive effect. *See* U.S.S.G., Amendment 706 (eff. Nov. 1, 2007). Accordingly, in 2008, the district court appointed the Federal Public Defender to review Hicks's sentence to determine whether he was eligible for a reduction in sentence, due to the guidelines amendments, pursuant to 18 U.S.C. § 3582(c)(2). *See* ECF 648, 668, 676. The Public Defender represented that the

applicable amended guidelines range for Hicks's sentence was 324 to 405 months and requested, on Hicks's behalf, that he be resentenced, again at the bottom of the applicable guidelines, to a sentence of 324 months.[2]  *See* ECF 675.  The government did not oppose this reduction, *see* ECF 689, and so, by Order entered on June 23, 2009 (ECF 695), Judge Legg reduced Hicks's sentence of imprisonment from 360 months to 324 months.

Four motions are now pending for decision by the Court: (1) a letter from Hicks to Judge Legg dated March 25, 2012, docketed on March 29, 2012, as a "Motion for Reconsideration re: sentence reduction" ("Sentence Reduction Motion") (ECF 788); (2) a "Motion to Correct Sentence" pursuant to 18 U.S.C. § 3582(c)(2), dated April 17, 2012 ("First § 3582(c)(2) Motion") (ECF 789); (3) a second motion filed pursuant to § 3582(c)(2) on October 9, 2012, which Hicks described as providing "a more indepth [sic] view of the facts submitted in his original pleading pursuant to . . . § 3582" ("Second § 3582(c)(2) Motion") (ECF 805); and a "Motion to Reopen Case Pursuant [to] Rule 60(b)(6)," filed on November 15, 2012 ("Fourth Rule 60(b) Motion") (ECF 808).  The government has not filed a response to any of the motions. However, neither a response nor a hearing is necessary, because the motions can readily be resolved on the basis of the record.  *See* Local Rule 105.6.

Judge Legg was unable to rule on these matters before his retirement.  Therefore, on November 20, 2012, the case was reassigned to me.  My rulings follow.

---

[2] In making this recommendation, defense counsel purported to "preserve[ ]" for Hicks "any *Booker* arguments that may be applicable based on future developments in the case law." ECF 675 at 1.  Subsequently, in *Dillon v. United States*, ___ U.S. ___, 130 S. Ct. 2683, 2692 (2010), the Supreme Court held that, "[g]iven the limited scope and purpose of § 3582(c)(2), . . . proceedings under that section do not implicate the interests identified in [*United States v.*] *Booker*, [543 U.S. 220 (2005)]," in which the Court had previously held that the United States Sentencing Guidelines are advisory, rather than mandatory.

**Background**

A. Original Sentencing

In order to place Hicks's contentions in context, it is helpful to provide background based on review of the record, including the Transcript of Hicks's sentencing (ECF 449); the Pre-Sentence Report ("PSR"), which was prepared as of January 12, 2000, and revised February 9, 2000; and the then-applicable United States Sentencing Guidelines.

In January 1999, almost nine months before trial, the government filed a "Joint Information on Enhanced Penalties Pursuant to 21 U.S.C. §§ 841(b) and 851(a)(1)" ("Enhancement Notice") (ECF 164), by which it gave notice that it intended to seek a statutory enhanced sentence against Hicks if he was convicted of a controlled substance offense.[3]  The government stated in the Enhancement Notice that it intended to seek a mandatory life sentence, pursuant to 21 U.S.C. § 841(a)(1)(A), based on an amount of crack exceeding the applicable statutory threshold, combined with any two of three prior Maryland state convictions: a conviction for manufacture or distribution of a controlled dangerous substance arising from an arrest on November 7, 1989 (the "1989 Conviction"), and two other convictions for controlled dangerous substance offenses in the early 1990s.

In convicting Hicks of conspiracy to distribute cocaine and crack, the jury was not asked to make, and did not make, any finding as to the amount of cocaine or crack attributable to Hicks.  *See* Verdict Sheet (ECF 356).  At the time of Hicks's sentencing, the determination of

---

[3] Under 21 U.S.C. § 841(b)(1), the statutory sentencing range for a controlled substance offense involving crack (among other substances) varies depending on the amount of the controlled substance involved in the offense and whether the defendant has prior convictions for "felony drug offenses."  If the government intends to seek a statutorily enhanced sentence on the basis of prior felony drug offense convictions, 21 U.S.C. § 851(a)(1) requires the government to file a pretrial notice, "stating in writing the previous convictions to be relied upon."

facts, such as narcotics quantity, that could subject a defendant to statutory sentence enhancements was a matter for the sentencing judge. *See, e.g.*, *United States v. Williams*, 152 F.3d 294, 300-01 (4th Cir. 1998). Moreover, a sentencing judge was entitled to adopt a recommendation in a PSR as to a finding of drug quantity "'without . . . specific inquiry or explanation,'" in the absence of an objection to the PSR's recommendation. *Id.* at 301 (citation omitted).

Hicks's PSR indicated that Hicks "could be held accountable for at least 3 kilograms of cocaine base." PSR ¶ 66. Under the Sentencing Guidelines at the time, attribution to a defendant of 1.5 kilograms or more of cocaine base dictated a base offense level of 38. *See* U.S.S.G. (1998), § 2D1.1(c). Three kilograms of crack was (and is) more than sufficient to trigger statutory enhanced penalties under 21 U.S.C. § 841(b)(1)(A). The statutory threshold for enhancement under § 841(b)(1)(A) at that time was 50 grams of crack.[4]

As discussed in more detail, *infra,* Hicks's trial and sentencing predated *Apprendi v. New Jersey*, 530 U.S. 466 (2000), in which the Supreme Court held that, "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." *Id.* at 490. Following *Apprendi*, "in order to authorize the imposition of a sentence exceeding the maximum allowable without a jury finding of a specific threshold drug quantity, the specific threshold quantity must be treated as an element of an aggravated drug trafficking offense, *i.e.*, charged in

---

[4] Under current law, following enactment of the Fair Sentencing Act of 2010 ("FSA"), Pub. L. 111-220, 124 Stat. 2372 (enacted Aug. 3, 2010), the threshold for sentencing enhancement under 21 U.S.C. § 841(b)(1)(A) is 280 grams of crack. There is also a lower intermediate threshold that triggers less severe sentencing enhancements. *See* 21 U.S.C. § 841(b)(1)(B). Under current law, the intermediate threshold under § 841(b)(1)(B) is 28 grams of crack; before the FSA was enacted, the intermediate threshold was 5 grams of crack.

the indictment and proved to the jury beyond a reasonable doubt." *United States v. Promise*, 255 F.3d 150, 156-57 (4th Cir. 2001) (en banc) (footnote omitted).

At sentencing, the defense did not challenge the PSR's determination of three kilograms of crack, and did not object to the resulting base offense level of 38.[5]  Over the defense's objections, Judge Legg ruled that Hicks was subject to two upward adjustments to his base offense level, of two levels each, leading to an adjusted base offense level of 42.  *See* Transcript at 16-29.  The first of the two disputed adjustments was a two-level increase under U.S.S.G. § 3B1.1(c) for a managerial role in the conspiracy.  *See* PSR ¶ 70.  Section 3B1.1(c) authorizes a two-level upward adjustment to the base offense level "[i]f the defendant was an organizer, leader, manager, or supervisor in any criminal activity . . . ."  As to this adjustment, Judge Legg said, Transcript at 24:

> Mr. Hicks did exercise management responsibility over the property and assets of the criminal organization because, for one reason, he was responsible with [a co-defendant] for making . . . wholesale purchases of drugs in New York, which was the primary asset of the organization, that was then sold at a retail and also a sub-wholesale level here in the State of Maryland.

The second disputed adjustment was a further two-level increase for obstruction of justice under U.S.S.G. § 3C1.1, because Hicks took the stand at trial and testified falsely concerning his role in the conspiracy.  As to this adjustment, Judge Legg stated, Transcript at 28-29:

> Application Note Four states that the following is a non-exhaustive list of examples of the type of conduct to which this adjustment applies.  Number B states, committing perjury.

---

[5] In fact, the PSR determined a base offense level of 43, based on application of the so-called "murder cross-reference."  *See* PSR ¶ 66.  The defense objected at sentencing to application of the murder cross-reference, arguing affirmatively that Hicks was only subject to a base offense level of 38.  *See* Transcript at 29-31.  The government and Judge Legg agreed with the defense that Hicks was not subject to the murder cross-reference.  *See id.*

Here, Mr. Hicks was charged in Count Three with participating in a drug conspiracy along with . . . others.  Mr. Hicks took the stand and denied that he was involved in the conspiracy, denied that he had transported Tide boxes of cocaine from New York, denied that he was involved in any way.

The jury saw it otherwise and convicted Mr. Hicks under Count Three, finding beyond a reasonable doubt that he was, in fact, a willing, knowing participant in the conspiracy.

Accordingly, by denying his conduct, he committed perjury as defined in Application Note Two and Four and testified willfully and materially in a way that was false.  Accordingly, [the probation officer who prepared the PSR] was correct in adding the two level enhancement for obstruction of justice.

In addition, Judge Legg determined that Hicks had a criminal history category of II.  *See id.* at 31-33.  Based on an adjusted base offense level of 42 and a criminal history category of II, the applicable sentencing guidelines range was 360 months to life.  *See id.*

Judge Legg proceeded to consider the applicable statutory sentence enhancements.  As noted, the government had filed an Enhancement Notice stating that it intended to seek a sentence of life imprisonment on the basis of any two of Hicks's three prior convictions for felony drug offenses.  Under 21 U.S.C. § 841(b)(1)(A), a defendant convicted of an offense involving the requisite threshold amount of crack (at the time of Hicks's sentencing, 50 grams; now, 280 grams) and who has previously been convicted of two or more felony drug offenses is subject to a mandatory life sentence.  A defendant convicted of an offense involving the same threshold amount of crack who has only one prior felony drug offense conviction is subject to a mandatory minimum of 20 years' imprisonment, and is exposed to a potential life sentence.  *See* 21 U.S.C. § 841(b)(1)(A).  A defendant who commits an offense involving the threshold amount of crack but who does not have any prior felony drug offense convictions is subject to a mandatory minimum of ten years' imprisonment, and remains exposed to a potential life

sentence.  *See id.*   In contrast, a defendant convicted as to an amount below the statutory thresholds is exposed to a potential maximum sentence of 20 years' imprisonment, unless he has one or more prior felony drug offense convictions, in which case he is exposed to a potential maximum sentence of 30 years' imprisonment.  *See id.* § 841(b)(1)(C).[6]

The defense conceded at sentencing that Hicks had three prior convictions.  *See* Transcript at 37-38.   But, the defense raised two challenges to the statutory sentence enhancements.  First, defense counsel contended that the defense did not properly receive the Enhancement Notice.  In this regard, Hicks's counsel at the time of the filing of the Enhancement Notice subsequently withdrew, and Hicks was represented by other counsel at trial and at sentencing.   At sentencing, defense counsel reported that he previously had raised with the prosecutor the issue of the government's alleged failure to give proper notice of the enhancements, stating: "I remember addressing this matter to [the prosecutor's] attention, saying, are you going to be filing with regard to the other defendants?  He said, we filed with regard to all of them.  I said, . . . I've been through this entire filed provided to me by [prior defense counsel].  It's very complete and very well organized and there's nothing concerning mandatory penalties."  Transcript at 34.[7]

Second, the defense disputed that two or more of Hicks's prior convictions qualified as prior felony drug offenses, so as to subject him to a mandatory life sentence under § 841(b)(1)(A).  In particular, the defense expressly conceded that the 1989 Conviction counted as a prior felony drug offense for purposes of sentence enhancement.  *See id.*  However, as to the

---

[6] The sentencing enhancements involving intermediate threshold amounts of narcotics under 21 U.S.C. § 841(b)(1)(B) are not relevant here.

[7] Despite this claim, the Enhancement Notice had been entered on the docket of the case.

two convictions from the early 1990s, the defense argued that they could not be counted as "prior" offenses for purposes of sentence enhancement, because at trial the government had, over the defense's objections, successfully introduced into evidence the conduct underlying those two convictions as acts performed as part of the conspiracy charged in the underlying federal case. *See id.* at 38.

In response, the government conceded that the two convictions from the 1990s "were intrinsic to the conspiracy, were part of the conspiracy as a whole.  And so [defense counsel] is correct, that there would simply only be one conviction that would be usable in this case, the 1989 conviction.  So we would not be pressing the mandatory." *Id.* at 39.  Accordingly, Judge Legg ruled that Hicks was not subject to a mandatory life sentence under § 841(b)(1)(A).[8]  *See* Transcript at 39.  Judge Legg also stated: "This means that I need not decide the issue as to whether or not [prior defense counsel] received the pretrial enhancement notice." *Id.*

The government requested a sentence "somewhere in the middle of the guidelines range" of 360 months to life.  *Id.* at 41.  But, Judge Legg sentenced Hicks to the bottom of the guidelines range, stating: "My view is that Mr. Hicks should be placed at the low end of the range, simply because . . . 360 months is, it's a long, long time and constitutes a substantial punishment for the offense that Mr. Hicks committed." *Id.* at 43.  As to his sentence of 360 months, Judge Legg observed: "This is a substantial sentence and adequately punishes Mr. Hicks

---

[8] There is a discrepancy as to the dates in connection with the two convictions from the 1990s.  In the Enhancement Notice, the convictions are described as arising from two arrests that occurred in 1991 and 1993.  However, in the PSR and at the sentencing hearing, the two offenses were both described as involving arrests in 1992.  It is not clear whether the PSR or the Enhancement Notice contains errors as to the dates, or whether the two documents are actually referring to different convictions.  However, there is no need to resolve the discrepancy, because the convictions from the 1990s were not counted against Hicks for sentencing enhancement.

for having participated in a widespread, major drug conspiracy, but also gives him the hope that after the passage of a number of years, that he will eventually be released and return to society." *Id.* at 45.

### B.  Reduction in Sentence

As noted, Hicks's sentence was subsequently reduced to 324 months, on the basis of a retroactive amendment to the Sentencing Guidelines.  In particular, in 2007, Amendment 706 to the Sentencing Guidelines increased the threshold amount of crack meriting a base offense level of 38 to 4.5 kilograms or more, exceeding the three kilograms that were attributed to Hicks. Under Amendment 706, an amount of crack between 1.5 and 4.5 kilograms merited a base offense level of 36.  In Mr. Hicks's case, this yielded an adjusted base offense level (after the two two-level upward adjustments) of 40.  An adjusted base offense level of 40 and a criminal history category of II correspond to a guidelines sentencing range of 324 to 405 months. Accordingly, Judge Legg resentenced Hicks, pursuant to 18 U.S.C. § 3582(c)(2), to 324 months' imprisonment, again at the bottom of the applicable guidelines range.

Notably, the guidelines have since been amended again, following the enactment of the Fair Sentencing Act.  *See* U.S.S.G., Amendments 748 (eff. Nov. 1, 2010), 750 (eff. Nov. 1, 2011), and 759 (eff. Nov. 1, 2011).  However, Hicks does not appear to request relief under the post-FSA guidelines amendments and, even if he did, his request would be unavailing.  Under the current guidelines, a base offense level of 36 now corresponds to between 2.8 and 8.4 kilograms of crack.  *See* U.S.S.G. (2012), § 2D1.1(c).  This range obviously encompasses the three kilograms attributed to Hicks.  Accordingly, the post-FSA amendments did not further alter the guidelines applicable to Hicks.

<u>C.  Appeal and Post-Conviction Proceedings</u>

As noted, Hicks's trial and sentencing predated the Supreme Court's 2000 decision in *Apprendi*, 550 U.S. 466.  That case was decided while Hicks's appeal from his conviction was pending.

On direct appeal, Hicks and several of his co-defendants argued that their sentences were invalid under *Apprendi*, because the amount of narcotics attributable to them had not been alleged in the indictment and determined beyond a reasonable doubt by the jury.  Because no defendant had raised this argument in the district court (given that *Apprendi* had not been decided at that time), the Fourth Circuit applied a plain error standard of review.  It said:

> Because Appellants did not raise these challenges to their convictions and sentences before the district court, they may only do so on appeal if they can demonstrate plain error.  Consequently, in order to prevail on appeal Appellants must demonstrate that: 1) their indictment does not include the specific threshold drug quantities necessary for conviction under the aggravated drug trafficking offenses in § 841(b)(1)(A), (B); 2) their resulting sentences are in excess of the statutory maximum otherwise available under § 841(b)(1)(C); 3) sentencing in this manner affected their substantial rights; and 4) this court should notice that error.

*Johnson*, *supra*, 26 F. App'x at 115-16 (internal citations and footnote omitted).  As "a threshold matter," the Court observed that the "indictment [did] not identify the drug quantities involved," thereby satisfying the first condition of its plain error analysis.  *Id.* at 116.

Nevertheless, the Fourth Circuit rejected Hicks's *Apprendi*-based challenge, saying, *id.*:

> Hicks cannot demonstrate error with respect to his thirty-year sentence as to Count Three, his single count of conviction.  Although the base statutory maximum of § 841(b)(1)(C) is twenty years, that subparagraph permits a maximum of thirty years where the defendant has one or more prior felony convictions.  Here, the Government filed the required pre-trial information on January 8, 1999 indicating its intent to seek enhanced penalties under § 841(b) against Hicks . . . in accordance with 21 U.S.C. § 851.  Because § 841(b)(1)(C) authorizes a ten-year enhancement based solely on a defendant's prior felony

convictions, and *Apprendi* explicitly exempts prior convictions from its scope, 530 U.S. at 490, Hicks' thirty-year sentence does not contain an *Apprendi* defect.

When Hicks subsequently challenged his conviction collaterally under 28 U.S.C. § 2255, he asserted three arguments: (1) that defense counsel was ineffective for failing to argue that the 1989 Conviction, like the convictions from the 1990s, came within the ambit of the charged conspiracy and therefore could not be considered a "prior" offense for purposes of sentence enhancement; (2) that the government failed to serve prior defense counsel with the Enhancement Notice, and defense counsel at sentencing was ineffective for failing to press this point; and (3) that his sentence must be vacated because the indictment failed to allege a specific drug quantity, and that he must be resentenced to no more than 20 years, the maximum sentence for a crack offense in the absence of statutory enhancements. *See* ECF 549 at 4-5.  Judge Legg rejected all three arguments.

As to the first claim, Judge Legg stated that Hicks's counsel (who was "an experienced member of the CJA panel") "focused his efforts on avoiding the mandatory life sentence"—an endeavor in which he was successful. *Id.* at 2.  Judge Legg recognized that Hicks's counsel argued that the convictions from the 1990s were part of the conspiracy but "did not make the same argument with respect to Hick's [sic] 1989 drug conviction," and indeed, "specifically conceded that the 1989 conviction could be counted as a predicate offense under the statute." *Id.* at 2-3.  However, Judge Legg held that this did not constitute ineffective assistance because defense counsel could not "be faulted for failing to anticipate *Apprendi*." *Id.* at 6.

Judge Legg reasoned that, because *Apprendi* had not been decided at the time of Hicks's sentencing, the test for ineffective assistance of counsel under *Strickland v. Washington*, 466 U.S. 668 (1984), "must be applied in the pre-*Apprendi* historical context," in which the

"established sentencing scheme called for the judge at sentencing to determine, based upon the preponderance of the evidence, the drug quantity attributable to the defendant . . . even when the drug quantity served to increase the statutory maximum." ECF 549 at 5-6.  Looking to the legal context at the time of sentencing, Judge Legg stated, *id.* at 3:

> Under Section 841, the statutory maximum for [conspiracy to distribute crack] *simpliciter* [*i.e.*, without any statutory enhancement] is 20 years.  There are two avenues under which the statutory maximum can be increased.  Under Section 841(b)(1)(C), one predicate conviction raises the sentencing ceiling to 30 years.  Under Section 841(b)(1)[(A)-(B)], certain elevated drug quantities also raise the ceiling to life imprisonment.
>
> At the time of sentencing, it appeared that Hicks qualified for an enhanced statutory maximum under both avenues.  He had a predicate drug conviction [*i.e.* the 1989 Conviction], and the Court found that Hicks should be held accountable for a conspiracy to distribute at least three kilograms of cocaine base.  By itself, this drug quantity raised the statutory maximum from twenty years to life imprisonment.  *See* 21 U.S.C. § 841(b)(1)(A).

Judge Legg observed that "it would have been futile for [defense counsel at sentencing] to contend for a drug quantity less than three kilograms of crack cocaine."  *Id.* at 6.  Indeed, the "evidence produced during the nine-week trial disclosed an organized, violent, persistent drug ring that sold quantities of cocaine base far in excess of three kilograms.  At their sentencings, some of Hicks's conspiracy co-defendants argued for a lesser drug quantity, but the Court rejected these arguments based on the overwhelming proof."  *Id.* at 3.  Thus, regardless of the 1989 Conviction, Hicks was exposed to a thirty-year sentence (indeed, he was exposed to a potential life sentence), due solely to the amount of cocaine base involved.  The "1989 conviction only became significant after *Apprendi*," *id.* at 6, under which a drug quantity must now be proven to the jury, thereby "invalidat[ing] one of the two avenues (drug quantity) that

raised Hicks's statutory maximum over 20 years," leaving "[o]nly the second avenue (the 1989 conviction) remain[ing]."  *Id.* at 5.

"Moreover," Judge Legg stated, "it appears that an effort to disqualify the 1989 conviction would have been unavailing."  *Id.* at 6.  He explained, *id.* at 6-7:

> Although 1989 is within the time frame of the charged conspiracy, that year was at the periphery, while 1992 (the other two convictions) was at the conspiracy's core.  The conspiracy focused upon the sale of drugs in the sprawling O'Donnell Heights housing project in southeast Baltimore.  The 1992 violations occurred within O'Donnell Heights when Hicks sold drugs to customers who came to his door.  In contrast, the 1989 violation took place in a different section of Baltimore when Hicks made a sale to two men who had come to the neighborhood in a cab looking to buy drugs.  Finally, the 1992 convictions were for possession with intent to distribute cocaine base, the primary drug sold by [Hicks's organization], whereas the 1989 conviction was for possession with intent to distribute cocaine powder.

In sum, Judge Legg concluded that Hicks's counsel "cannot be faulted for failing to press an argument that appeared doomed to fail."  *Id.* at 7.

As to Hicks's arguments regarding receipt of the Enhancement Notice, Judge Legg rejected them because Hicks did not present any evidence, aside from his counsel's comments at the sentencing hearing that would show that the Enhancement Notice was not actually sent to defense counsel.  Indeed, the Enhancement Notice was docketed as of January 1999.  *See* ECF 164.  Therefore, Judge Legg concluded that there was no evidence in the record sufficient to rebut the applicable presumption of proper delivery arising from the certificate of service on the Enhancement Notice and its entry on the docket.  Moreover, Judge Legg held that Hicks's counsel could not be considered ineffective for failing to press the issue, especially in light of the fact that the two convictions from the 1990s had been disqualified, making the 1989 Conviction a moot point, given that the drug quantity exposed Hicks to a thirty-year sentence.  *See id.* at 7-8.

With respect to Hicks's claim that his conviction must be vacated because the drug quantity was not alleged in the indictment and proven to the jury, Judge Legg held that this was the same *Apprendi* claim that Hicks had unsuccessfully asserted on direct appeal to the Fourth Circuit. Accordingly, in the absence of an intervening change in the law or newly discovered evidence, it could not be relitigated. *See id.* at 8.

Therefore, Judge Legg denied Hicks's § 2255 petition. As noted, Judge Legg also denied several subsequent motions that Hicks filed pursuant to Fed. R. Civ. P. 60(b), seeking reconsideration of the decision as to the § 2255 motion. Hicks's appeals from the denials of those Rule 60(b) motions were all dismissed by the Fourth Circuit.

With this background, I turn to consider Hicks's arguments in the four motions that are currently pending.

## Discussion

Hicks has filed four separate documents that have been docketed as pending motions. In his Sentence Reduction Motion, Hicks argues that the Court should reconsider the revised guidelines calculation that was imposed when Hicks's sentence was previously reduced under Amendment 706 to the Sentencing Guidelines. He explains that Judge Legg erred in assigning him a two-level upward adjustment for a managerial or supervisory role in the conspiracy under U.S.S.G. § 3B1.1(c), because he only managed the drug organization's property, not the activities of other participants. Hicks reiterates and expands on this argument in his First § 3582(c)(2) Motion. Further, he expands on the same argument in his Second § 3582(c)(2) Motion, but also raises a second argument: that his maximum potential sentence under 21 U.S.C.

§ 841 was twenty years' imprisonment and thus, by operation of U.S.S.G. § 5G1.1(a), the maximum statutory sentence should have been considered the guidelines sentence.

Hicks's third and fourth arguments are both contained in his Fourth Rule 60(b) Motion. The third argument is that his 1989 Conviction should not be counted as a prior "felony drug offense," because he contends it did not satisfy the statutory definition of that term: "an offense that is punishable by imprisonment for more than one year under any law of the United States or of a State or foreign country that prohibits or restricts conduct relating to narcotic drugs, marihuana, anabolic steroids, or depressant or stimulant substances." 21 U.S.C. § 802(44); *see Burgess v. United States*, 553 U.S. 124, 127 (2008) (holding that a "state drug offense punishable by more than one year . . . qualifies as a 'felony drug offense,' even if state law classifies the offense as a misdemeanor").

Fourth, Hicks advances what he contends is newly discovered evidence that his 1989 Conviction should not be considered a *prior* felony drug offense because, like his other state convictions from the 1990s, the 1989 Conviction was based on conduct that formed part of the conspiracy of which he was charged and convicted in this case. The evidence he presents is a letter dated November 2, 2012, from a Supervisory U.S. Probation Officer in the District of Maryland Probation and Pre-Trial Services Office (ECF 808-3), asserting that no criminal history points were assessed in his PSR for the 1989 Conviction or the convictions from the 1990s because "[v]irtually all of [Hicks's] prior convictions were related to the instant offense and were thus not scored." ECF 808-3 at 1.

I consider these arguments in turn.

A.  Managerial Enhancement

At sentencing, over the defense's objection, the court assigned Hicks a two-level upward adjustment to his offense level under U.S.S.G. § 3B1.1(c) on the basis of a managerial role in the conspiracy.  As noted, the court did so because Hicks had exercised management responsibility over property or assets of the conspiracy—specifically, the crack cocaine that the organization sold.

Hicks did not challenge application of the § 3B1.1(c) adjustment in his direct appeal or in his § 2255 petition.  Moreover, Hicks did not raise the issue when the court was considering reduction of his sentence under 18 U.S.C. § 3582(c)(2) and Amendment 706 to the Sentencing Guidelines.  Although Judge Legg entered the Order reducing Hicks's sentence from 360 months to 324 months on June 23, 2009, Hicks did not mention the issue until he filed his Sentence Reduction Motion in March 2012, over three years after the revision of his sentence.

If Hicks had raised this argument on direct appeal, perhaps he would have been successful.  As noted, § 3B1.1(c) authorizes a two-level upward adjustment to the base offense level "[i]f the defendant was an organizer, leader, manager, or supervisor in any criminal activity . . . ."  Fourth Circuit precedent establishes that "a defendant does not qualify for an aggravating role enhancement under USSG § 3B1.1 in the absence of evidence that he organized or managed participants, as opposed to property, in the criminal enterprise."  *United States v. Slade*, 631 F.3d 185, 190 n.1 (4th Cir. 2011); *accord United States v. Llamas*, 599 F.3d 381, 389-90 (4th Cir. 2010); *United States v. Cameron*, 573 F.3d 179, 185-86 (4th Cir. 2009); *United States v. Sayles*, 296 F.3d 219, 225 (4th Cir. 2002).  Indeed, the Court has held that erroneous

application of the § 3B1.1 enhancement to a defendant who only managed property, rather than people, constitutes plain error.  *See Slade*, 631 F.3d at 191-92.

Before 1995, circuit precedent was otherwise.  In *United States v. Chambers*, 985 F.2d 1263 (4th Cir. 1993), and *United States v. Paz*, 927 F.2d 176 (4th Cir. 1991), the Court had held (in disagreement with several other circuits) that "one who manages property without supervising people can be a 'manager' within the meaning of § 3B1.1 . . . ."  *Chambers*, 985 F.2d at 1268.  However, as the Fourth Circuit explained in *United States v. Capers*, 61 F.3d 1100, 1109 (4th Cir. 1995), in direct response to the Fourth Circuit's decision in *Chambers,* the Sentencing Commission "amended the commentary to U.S.S.G. § 3B1.1 by adding a new Application Note 2."  *See id.* at 1110 ("[T]he amendment was a response to *Chambers*."). Application Note 2 states: "To qualify for an adjustment under this section, the defendant must have been the organizer, leader, manager, or supervisor of one or more other *participants*." (Emphasis added.)  The *Capers* Court held that Application Note 2 had "the effect of changing the law in this circuit.  Before the amendment, a defendant in this circuit could receive the enhancement without having exercised control over other persons; after the amendment, the defendant must have exercised control over other persons to warrant the enhancement."  *Capers*, 61 F.3d at 1110.

The Transcript of Hicks's sentencing hearing makes clear that Judge Legg reached a contrary conclusion because he and the government read Application Note 2 to § 3B1.1 to permit the enhancement.  *See* Transcript at 16-24.[9]  Although Application Note 2, as quoted above,

---

[9] Although the defense argued against imposition of the upward adjustment, neither defense counsel nor the government cited *Capers* or any other case law that would have made

expressly states that "the defendant must have been the organizer, leader, manager, or supervisor of one or more other participants" in order to qualify for the adjustment, it also states: "An *upward departure* may be warranted, however, in the case of a defendant who did not organize, lead, manage, or supervise another participant, but who nevertheless exercised management responsibility over the property, assets, or activities of a criminal organization." (Emphasis added.)  At sentencing, both the government and Judge Legg seized on this language, interpreting it as authorizing application of the upward adjustment to a defendant who managed only property.  Nevertheless, case law dictates that this language authorizes only an upward *departure* (*i.e.*, a variance), not the § 3B1.1 upward *adjustment*.  In other words, "[c]ontrol over the activities or assets of a criminal organization may . . . support an upward departure [*i.e.*, variance] from the guidelines, but may not contribute to the calculation of the guideline sentence." *United States v. Whitney*, 673 F.3d 965, 975 n.6 (9th Cir. 2012).

Even assuming that Hicks is correct in regard to this claim, he raises his contention far too late.  His request for reconsideration of the Court's Order reducing his sentence pursuant to § 3582(c)(2) comes over three years after entry of the Order.  The Fourth Circuit has made clear that a district court has no authority to revisit a sentence reduction determination made under § 3582(c)(2) after so long a time.

In *United States v. Goodwyn*, 596 F.3d 233 (4th Cir.), *cert. denied*, 130 S. Ct. 3530 (2010), the Court held that a district court lacked the power to further reduce a sentence that it had already reduced under § 3582(c)(2), upon a motion for reconsideration filed eight months after the original § 3582(c)(2) ruling.  According to *Goodwyn*, "the district court clearly acted

---

apparent to Judge Legg that imposition of the upward adjustment, solely on the basis of management of property, was in error.

within its authority in granting Goodwyn's first motion to modify his sentence," but the court was not permitted "to reduce Goodwyn's sentence a second time, almost eight months after the first reduction." *Id.* at 235. It said: "Goodwyn cannot point to any federal statute that expressly authorized his motion for reconsideration; no such provision exists." *Id.* at 235-36. In summation, the Fourth Circuit stated, *id.* at 236:

> When the Sentencing Commission reduces the Guidelines range applicable to a prisoner's sentence, the prisoner has an opportunity pursuant to § 3582(c)(2) to persuade the district court to modify his sentence. If the result does not satisfy him, he may timely appeal it. But he may not, almost eight months later, ask the district court to reconsider its decision.[10]

Even if Hicks had timely raised the issue during the pendency of his sentence reduction under § 3582(c)(2), it is most unlikely that Judge Legg could have addressed the claim of erroneous upward adjustment under U.S.S.G. § 3B1.1(c). Section 3582(c)(2) is a vehicle for retroactive application of certain designated amendments to the Sentencing Guidelines, and nothing more.

In *Dillon v. United States*, ___ U.S. ___, 130 S. Ct. 2683 (2010), the Supreme Court emphasized the narrow scope of a sentence reduction proceeding under § 3582(c)(2), holding that correction of miscellaneous errors in the original guidelines calculation is outside the purview of such a proceeding. The defendant in *Dillon* argued that the district court "erred in

---

[10] Some language in *Goodwyn* suggests that it is impermissible to file a motion for reconsideration of a §3582(c)(2) ruling at all, while other language indicates that the defendant's motion for reconsideration in *Goodwyn* was untimely. The Tenth Circuit, while saying that it "agree[d] with the Fourth . . . Circuit[']s" decision in *Goodwyn*, has held that a motion to reconsider a § 3582(c)(2) ruling may be filed within the fourteen-day time to appeal from the ruling. *See United States v. Randall*, 666 F.3d 1238, 1242 (10th Cir. 2011); *accord United States v. Redd*, 630 F.3d 649, 650 (7th Cir. 2011). I need not resolve this ambiguity because, even if a motion for reconsideration of a § 3582(c)(2) ruling is permissible within some time period, the *Goodwyn* Court's conclusion that eight months was too long dictates the same result as to the more than three years that elapsed here.

failing to correct two mistakes in his original sentence" that had "erroneously inflated" his criminal history category. *Id.* at 2693-94. Rejecting this view, the Court said: "Section 3582(c)(2)'s text, together with its narrow scope, shows that Congress intended to authorize only a limited adjustment to an otherwise final sentence and not a plenary resentencing proceeding." *Id.* at 2691. The *Dillon* Court noted that § 1B1.10 of the Sentencing Guidelines, which governs sentence reduction under § 3582(c)(2), requires that "'the court shall substitute only the [designated retroactive] amendments . . . for the corresponding guideline provisions that were applied when the defendant was sentenced *and shall leave all other guideline application decisions unaffected.*'" *Id.* at 2691 (quoting U.S.S.G. § 1B1.10) (emphasis added). Where "the aspects of [a defendant's] sentence that [he or she] seeks to correct were not affected" by a retroactive amendment to the Sentencing Guidelines, "they are outside the scope of the proceeding authorized by § 3582(c)(2)." *Id.* at 2694. Thus, Hicks's argument concerning the upward adjustment under § 3B1.1(c) cannot be reached by way of § 3582(c)(2).

Even if the Court were to consider Hicks's argument under another procedural vehicle, he still could not succeed. Hicks already litigated a § 2255 petition, without raising this issue. He has not obtained the necessary certification from the Fourth Circuit authorizing him to file a "second or successive [§ 2255] motion," as required by 28 U.S.C. § 2255(h). It does not appear likely that he is eligible for such a certification, given that the issue involves neither "newly discovered evidence," *id.* § 2255(h)(1), nor "a new rule of constitutional law." *Id.* § 2255(h)(2). And, such a § 2255 motion would likely now be time-barred in any event. *See id.* § 2255(f) (establishing limitations period for § 2255 petitions of one year after the latest of four possible events, none of which occurred less than one year before Hicks first raised his current argument).

Indeed, even if Hicks had raised the issue of the § 3B1.1(c) adjustment in his original § 2255

petition, it still might not have been cognizable because, given that he clearly could have asserted

the issue on direct appeal of his conviction and sentence, it would have been procedurally

defaulted unless he could "'show cause and actual prejudice . . . or . . . that a miscarriage of

justice would result from the refusal of the court to entertain the collateral attack.'"  *United*

*States v. Pettiford*, 612 F.3d 270, 279 n.7 (4th Cir. 2010) (quoting *United States v. Mikalajunas*,

186 F.3d 490, 492-93 (4th Cir. 1999)).

### B.  Guidelines Sentence as Statutory Maximum Sentence

Hicks's second argument can be resolved more expeditiously.  Hicks claims that, because

the jury did not make a finding as to any particular quantity of crack attributable to him, the

statutory maximum sentence was only twenty years' imprisonment.  Moreover, § 5G1.1(a) of the

Sentencing Guidelines provides that, "[w]here the statutorily authorized maximum sentence is

less than the minimum of the applicable guideline range, the statutorily authorized maximum

sentence shall be the guideline sentence."  Accordingly, he reasons that his guidelines sentence

should have been twenty years, and that is the term to which his sentence should have been

reduced under § 3582(c)(2).

This claim is time-barred for all of the same reasons discussed above.  But, even if the

Court could reach the merits, it merely presents a gloss, in the § 3582(c)(2) context, on the

*Apprendi* argument that the Fourth Circuit has already rejected.  I also note that the Eleventh

Circuit carefully considered the precise argument Hicks advances in an unreported decision, and

held that it was without merit.  *See United States v. Williams*, 477 F. App'x 590 (11th Cir. 2012).

<u>C.  Punishable by Imprisonment for More than One Year</u>

As noted, Hicks presents his third and fourth arguments in his Fourth Rule 60(b) Motion, which seeks post-judgment reconsideration of the ruling that Judge Legg issued eight years ago, denying Hicks's § 2255 petition.  Judge Legg has rejected several previous Rule 60(b) motions filed by Hicks as time-barred and lacking in merit.

As I will explain, because Hicks's motion arises in the post-conviction context, it should not be considered under the rubric of Rule 60(b).  But, even on its own terms, the Fourth Rule 60(b) Motion is not viable.  Hicks's Fourth Rule 60(b) Motion is based on Fed. R. Civ. P. 60(b)(2), which permits a post-judgment motion based on "newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial."  Pursuant to Fed. R. Civ. P. 60(c)(1), a motion for relief under Rule 60(b)(2) must be filed "no more than a year after the entry of the judgment or order" from which the movant seeks relief.  By that standard, Hicks's motion is seven years too late.  Even if his Fourth Rule 60(b) Motion came under a different provision of Rule 60(b) that is not subject to the one year bar, such a motion still must be filed "within a reasonable time," Fed. R. Civ. P. 60(c)(1), and there is no indication that Hicks's eight year delay was reasonable.  Indeed, the arguments he asserts in his Fourth Rule 60(b) Motion could have been asserted on direct appeal.  *See Aikens v. Ingram*, 652 F.3d 496, 501 (4th Cir. 2011) (en banc) ("[I]f the reason asserted for the Rule 60(b) . . . motion could have been addressed on appeal from the judgment, we have denied the motion as merely an inappropriate substitute for an appeal.").

As to Hicks's third argument (the first argument advanced in the Fourth Rule 60(b) Motion), the contention is also plainly lacking in merit.  Hicks contends that his 1989 Conviction

should not have been counted as a "felony drug offense" for the purpose of sentence enhancement under 21 U.S.C. § 841, because he claims that his 1989 Conviction was not "punishable by imprisonment for more than one year."   21 U.S.C. § 802(44) (definition of "felony drug offense").   Hicks's argument reflects a clear misunderstanding of the meaning of the statutory definition of a "felony drug offense."

Hicks makes this claim because he was not actually punished by imprisonment for more than one year.   He presents records of the 1989 Conviction from Maryland state court showing that he was, in fact, sentenced to a term of incarceration for only six months.   This fact was known at the time of his sentencing; the PSR plainly stated it.   *See* PSR ¶ 78.   However, it is irrelevant; the statutory definition of a "felony drug offense" does not turn on the length of the sentence that was actually imposed.   Rather, it turns on "*the maximum sentence that could have been imposed* on a person with the defendant's actual level of aggravation and criminal history." *United States v. Powell*, 691 F.3d 554, 556 (4th Cir. 2012) (emphasis added and omitted).

Hicks's 1989 Conviction involved possession of a controlled dangerous substance with intent to distribute.   In 1989, possession of a controlled dangerous substance with intent to distribute was criminalized by Article 27, § 286 of the Annotated Code of Maryland.[11]   Then, as now, the maximum penalty for the crime depended upon what substance the defendant was convicted of possessing: if the substance was a Schedule I or II narcotic drug, the maximum penalty was twenty years' imprisonment, whereas possession of other controlled dangerous substances entailed a maximum penalty of only five years.   *See* Md. Code Ann. (1957, 1987 Repl. Vol., 1989 Supp.), Art. 27, § 286(b)(1), (3).   But, in any event, the maximum possible

---

[11] The prohibition is now codified in Title 5, Subtitle 6 of the Criminal Law Article of the Maryland Code.

penalty exceeded one year, and so the offense was (and is) a "felony drug offense" for purposes

of sentence enhancement under 21 U.S.C. § 841, regardless of the length of the state sentence

that actually was imposed.  Accordingly, Hicks's argument is devoid of merit.

### D.  1989 Conviction as Part of the Conspiracy

Hicks's remaining argument is simply a new contention in support of an overarching

argument that has been repeatedly rejected:  that his 1989 Conviction should not have been

counted as a *prior* felony drug offense because the conduct underlying the conviction was part of

the conspiracy of which he was convicted in this case.  As discussed, *supra*, his counsel made an

express concession to the contrary at sentencing, and Judge Legg rejected Hicks's argument in

his § 2255 petition that the 1989 Conviction should not count for this reason, both as an assertion

of ineffective assistance of counsel and on the merits.

The basis for Hicks's reassertion of this claim is what he describes as newly discovered

evidence.  In particular, Hicks points to a letter dated November 2, 2012, from Supervisory U.S.

Probation Officer Nicole R. Blanche to Hicks, in which Ms. Blanche stated, ECF 808-3 at 1:

> I am in receipt of your letters dated October 18 and 20, 2012, wherein you
> are challenging several aspects of the PSR [that was prepared for Hicks's
> sentencing].  Specifically, you cite several convictions at paragraphs 78 and 88
> [*n.b.*: the 1989 Conviction was the subject of paragraph 78 of the PSR], and claim
> that criminal history points were assessed.  I direct your attention to the report and
> point out that *no points were assessed for these convictions as it was determined*
> *that they constituted conduct that was part of the instant offense*.  The *only* points
> assessed were [for two other convictions, not relevant here, that were not drug-
> related offenses].  Virtually all of your prior convictions were related to the
> instant offense and were thus not scored. . . .  I am at a loss regarding the crux of
> your argument on this issue.  (Italics in original; underline emphasis added.)

As already discussed, even if this actually constituted newly discovered evidence, it

would still be time barred if construed, as Hicks has presented it, as a request for reconsideration

of the denial of his § 2255 motion under Fed. R. Civ. P. 60(b).  In some circumstances, newly

discovered evidence can form the basis of a second or successive § 2255 motion, if the proper

certification is obtained (which Hicks has not done).  *See* 28 U.S.C. § 2255(h)(1).  However, in

my view, the matter that Hicks seeks to present is not newly discovered evidence.

As Ms. Blanche's letter indicates, the PSR reveals that no criminal history points were

scored for the 1989 Conviction.  *See* PSR ¶ 78 (awarding "0 pts.").  Moreover, the PSR provides

the reason for doing so.  It cites U.S.S.G. § 4A1.2(a)(1), which states: "The term 'prior sentence'

means any sentence previously imposed upon adjudication of guilt, whether by guilty plea, trial,

or plea of *nolo contendere*, <u>for conduct not part of the instant offense</u>."  (Italics in original;

underline emphasis added.)  *See* PSR ¶ 78.

Thus, the argument that the Probation Office did not believe that Hicks's 1989

Conviction constituted a prior offense was readily available to Hicks's defense counsel at the

time of sentencing.  Moreover, Hicks could have presented this argument in his § 2255 motion,

but did not do so.  Accordingly, he cannot now attack Judge Legg's determination, in ruling on

the § 2255 motion, that any such argument would have been both pointless and futile: pointless,

because at the time of sentencing, pre-*Apprendi*, it did not matter whether Hicks had one prior

felony drug offense conviction, given that the amount of drugs attributable to him exposed him

to a potential life sentence; futile, because Judge Legg determined that the 1989 Conviction was

so distinct, in time and manner, from the core conduct of the conspiracy that it was, in fact,

outside of the conspiracy.[12]

---

[12] I recognize that, on direct appeal, Hicks's sentence was not vacated pursuant to
*Apprendi*; the 1989 Conviction exposed him to a thirty-year sentence, notwithstanding that,
under *Apprendi,* judicial attribution of a particular quantity of drugs to him for sentence

<u>E.  Resolution</u>

Hicks has presented his claims as requests for reconsideration of Judge Legg's earlier rulings rendered under 18 U.S.C. § 3582(c)(2) and 28 U.S.C. § 2255.  As explained above, they are not cognizable as presented.  Although Hicks has not presented his claims in a second or successive motion under § 2255 (indeed, he expressly asked the Court not to construe his Fourth Rule 60(b) Motion as a second or successive § 2255 motion), Fourth Circuit precedent indicates that the claims are the functional equivalent of second or successive § 2255 motions.  Moreover, because Hicks has not sought a certification from the Fourth Circuit permitting him to file a second or successive § 2255 motion, Fourth Circuit case law dictates that the proper resolution of Hicks's claims is to dismiss them for lack of jurisdiction.

In *United States v. Winestock*, 340 F.3d 200 (4th Cir. 2003), the Fourth Circuit gave instruction to district courts that are presented with claims that, despite how they are characterized by the defendant, are in substance unauthorized second or successive § 2255 motions.  The Court said: "[W]e now hold that district courts must treat Rule 60(b) motions as successive collateral review applications when failing to do so would allow the applicant to 'evade the bar against relitigation of claims presented in a prior application or the bar against litigation of claims not presented in a prior application.'"  *Id.* at 206.  It continued, *id.* at 206-07 (internal citations and footnote omitted) (emphasis added):

> We emphasize that we do not require that all Rule 60(b) motions be treated as successive applications; instead, the proper treatment of the motion

enhancement purposes was not permissible.  Yet, on collateral review, his counsel's failure to challenge the 1989 Conviction at sentencing was held not to be ineffective assistance because *Apprendi* had not been decided at the time of sentencing, and the pre-*Apprendi* judicial finding of drug quantity applicable to Hicks exposed him to an enhanced *statutory thirty-year* sentence, regardless of the 1989 Conviction.

depends on the nature of the claims presented. . . .

Our holding raises the question of how to distinguish a proper Rule 60(b) motion from a "successive [application] in 60(b)'s clothing."  There may be no infallible test for making this distinction, but a relatively straightforward guide is that a motion directly attacking the prisoner's conviction or sentence will usually amount to a successive application, while a motion seeking a remedy for some defect in the collateral review process will generally be deemed a proper motion to reconsider.  Thus, a brand-new, free-standing allegation of constitutional error in the underlying criminal judgment will virtually always implicate the rules governing successive applications.  Similarly, new legal arguments or proffers of additional evidence will usually signify that the prisoner is not seeking relief available under Rule 60(b) but is instead continuing his collateral attack on his conviction or sentence.  By contrast, an example of a proper Rule 60(b) claim is an allegation that government agents perpetrated a fraud on the court during the collateral review proceedings.

To comply with the standards set forth above, district courts must examine the Rule 60(b) motions received in collateral review cases to determine whether such motions are tantamount to successive applications.  *If so, the court must either dismiss the motion for lack of jurisdiction or transfer it to this court so that we may perform our gatekeeping function* [of determining whether to issue a certificate authorizing a second or successive § 2255 motion].

To the extent that Hicks's claims arise under 18 U.S.C. § 3582(c)(2), the Court lacks jurisdiction to entertain a motion for reconsideration of the earlier reduction of Hicks's sentence.  To the extent that Hicks purports to raise these claims as requests, pursuant to Rule 60(b), for reconsideration of the denial of his § 2255 motion, the analysis from *Winestock* indicates that the Court must treat his claims as the functional equivalent of a second or successive § 2255 motion, which the Court lacks jurisdiction to consider, in the absence of certification from the Fourth Circuit.  Pursuant to *Winestock*, this leaves the Court with two choices: "either dismiss the motion for lack of jurisdiction or transfer it" to the Fourth Circuit.  *Winestock*, 340 F.3d at 207.

Because I deem Hicks's claims unlikely to succeed even as second or successive § 2255 motions, I will choose the former path, and dismiss Hicks's claims for lack of jurisdiction.  In the

event that Hicks believes he can satisfy the stringent standards for presentation of a second or successive § 2255 petition, he is free to request certification to do so from the Fourth Circuit. The Clerk will be directed to furnish him with the appropriate forms.

## Conclusion

For the foregoing reasons, the pending motions filed by defendant will be dismissed.  An Order implementing my ruling follows.

Date:   April 19, 2013                                      _____/s/_____
                                                                    Ellen Lipton Hollander
                                                                    United States District Judge